IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CLAUDE A. WHITE,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )          Case No. CV-00-TMP-2332-S
                                    )
CITY OF BIRMINGHAM, *et al.*,       )
                                    )
            Defendants.             )

**ENTERED**

NOV 2 9 2001

**MEMORANDUM OPINION**

This cause is before the court on the motion for summary
judgment filed on June 11, 2001, by the defendants, the City of
Birmingham, Shelia Finney, Thomas Thrash, Scott Salser, and Ronald
Sellers.[1] Defendants seek dismissal of all of plaintiff's claims
based on absolute and qualified immunity, and on Monell v.
Department of Social Services, 436 U.S. 658 (1978). This matter
has been fully briefed. The court has considered the evidence and
the arguments set forth by both parties. The parties have
consented to the exercise of jurisdiction by the undersigned

---

[1]     The individual defendants named herein are being sued
in their individual capacities. All claims against the
defendants in their official capacities were dismissed by orders
dated April 30, 2001, and June 12, 2001. Additionally, the
plaintiff voluntarily dismissed all claims against defendants
Jerry Williams, Richard Miller, Quinton Hamilton, and Michael
Coppage; an order of dismissal was entered on June 20, 2001.

pursuant to 28 U.S.C. § 636(c); accordingly, the court submits this memorandum opinion.

## FACTS

Plaintiff Claude A. White brought this action seeking money damages and attorneys fees pursuant to 42 U.S.C. § 1983, contending that the defendants unlawfully detained him in violation of his Fourth and Fourteenth Amendment rights and in violation of state law.[2]   Plaintiff's claims arise from an incident in which Birmingham police officers entered his apartment pursuant to a warrant to search for illegal drugs.  The defendants assert that the claims are barred by the doctrines of qualified and absolute immunity, and that the search was made pursuant to probable cause. For purposes of determining the merits of defendants' motion for summary judgment, the court considers the following facts to be undisputed:

On the afternoon of September 23, 1999, Shelia Finney, a Birmingham police officer working undercover in the narcotics unit, went to an apartment complex at 408 Tuscaloosa Avenue Southwest in Birmingham, Alabama.  The plaintiff lived in Apartment 3 of that

---

[2]     Plaintiff concedes that the other claims set forth in his complaint and amended complaint have been dismissed or are no longer being pursued by plaintiff.  (Plaintiff's brief at p. 7.)

complex.  Finney had been informed of a citizen complaint received by the Birmingham Police Department alleging that drugs were being sold from the apartment complex.  The complaint alleged that drugs were sold from Apartments 3, 4, 5, and 9.

On September 23, 1999, Finney went to the complex with Detective Francine Nalls and a paid confidential informant to arrange a "controlled buy" of illegal drugs from the apartment complex.  The confidential informant had given Finney accurate information in the past and had worked with Finney on other controlled drug buys.  Before arriving at the complex, the officers searched the informant for weapons and/or drugs.  After the search uncovered no drugs or weapons, Finney told the confidential informant to try to buy drugs, to return with the drugs, and to tell her from which apartment he had purchased drugs.  Finney remained in the car some distance away because she believed she might be recognized as a police officer; she had previously been assigned to patrol that same neighborhood.  The informant talked to a group of men standing in front of the complex, and then entered an apartment at about 1 p.m.  Finney could not see the number on the apartment that the informant entered, but could see him enter the doorway.  The informant bought crack cocaine and returned to the door of the apartment with the man who sold him the cocaine.

Finney saw the man in the doorway, and described him as approximately five-foot-eight, 150 pounds,[3] in his twenties, with a gold tooth and medium complexion.  The informant returned to the car, turned over the cocaine, and told the officers that he had gone into Apartment 3.

Finney prepared an affidavit reciting her observations at the apartment complex, and requested a search warrant for Apartment 3. Jefferson County District Court Judge Robert Cahill issued a search warrant for White's apartment on September 24, 1999.  Pursuant to a separate investigation and affidavit, a warrant for Apartment 5 had been issued on August 17, 1999, which similarly described a man in his twenties, about five-foot-eight, weighing approximately 150 pounds.  A warrant also was issued for Apartment 4.  On the evening of September 24, 1999, a briefing was held at the North Precinct concerning the warrants to be executed that night.  Descriptions of the suspects and properties were read.

At about 11:10 p.m., Finney, along with other officers Quentin Hamilton, Jerry Williams, Thomas Thrash, Donald Salser, Ronald Sellers and Byron Miller, executed the warrant on Apartment 3.  At or about the same time, the warrant for Apartment 5 also was

---

[3]     In the affidavit made pursuant to the search warrant, Finney described the man's weight as 170 pounds, but her initial report stated that he weighed approximately 150 pounds.

executed.   The police officers rammed open the door of White's apartment while White was sleeping.[4]   White was wearing only his underwear.   With guns drawn, officers ordered White to the floor and handcuffed him.   Finney informed White that they were executing a search warrant for drugs.   The officers then allowed White to dress in a pair of shorts and took him to the front of the apartment.   The officers observed that White did not match the description of the alleged drug dealer described in the warrant. White is more than six feet tall, weighs about 230 pounds, is dark complected, and has no gold teeth.   Officers searched the apartment for about 50 minutes and found no evidence of illegal drug activity.   When White was shown the warrant after the search was completed, he told police that the man described in the warrant lived in Apartment 5.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[4]     The officers have testified that White was sitting on the edge of the bed when they entered the room, and that he was holding a plate of food.   They also testified that they knocked at least twice, announced that they were police officers, and waited about 15 seconds before ramming the door.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ.

P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings.  <u>Celotex</u>, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Id</u>. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id</u>. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  <u>Id</u>. at 249.  His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

7

must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Comm., Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility deter-minations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

### I. § 1983 Claims

#### A. Immunity of the Individual Defendants

Plaintiff's claims arise under 42 U.S.C. § 1983, which provides a right of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" when the deprivation is caused by anyone acting under color of law. Id. Essentially, plaintiff asserts that he was unlawfully detained during the 50-minute search and that the search of his apartment was illegally conducted in the absence of probable cause.

Under federal law, it is well settled that qualified immunity protects government officials performing discretionary functions from civil suit, and from liability, where their conduct does not violate "clearly established statutory or constitutional rights". Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994)(citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982))(additional citations omitted). Furthermore, it is the general rule that qualified immunity will protect government actors from liability, and only in "exceptional cases" will the immunity be unavailable as a shield. Id. Even so, qualified immunity does not apply in those instances where the law has "been developed in such a concrete and factually defined

9

context to make it obvious to all reasonable government actors, in the defendant's place," that the actions violate federal law.  <u>Id</u>.

Plaintiff does not argue that there exists such factually similar case law as to compel the abolition of immunity.  Rather, plaintiff argues that a narrow exception applies where the plaintiff can show "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law."  Plaintiff's brief at p. 8, citing <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 926 (11th Cir. 2000).[5]  In <u>Priester</u>, an excessive force case, the court noted that the narrow exception applied only where the official's conduct at issue was "so far beyond the border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without case law on point."  <u>Id</u>., citing <u>Smith</u>, 127 F.3d at 1419.  Consequently, under both the general rule of <u>Lassiter</u> and the narrow exception explained in <u>Preister</u>, "pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-

---

[5]    Plaintiff's counsel apparently inadvertently failed to cite to this case, but the quote is taken from the above-referenced case, which quotes <u>Smith v. Mattox</u>, 127 F.3d 1416, 1419 (11th Cir. 1997).

situated, reasonable government agent that what defendant is doing violates federal law in the circumstances" in order for qualified immunity to be unavailable to the defendants.  <u>Priester</u>, 208 F.3d at 927, citing <u>Lassiter</u>, 28 F.3d at 1150.

It also has been determined that a claim for illegal search or seizure "can hardly be applied to an unknowing act." <u>Brower v. Inyo County</u>, 489 U.S. 593, 596, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989).  The law does not recognize a cause of action for a negligent seizure.  <u>Ansley v. Heinrich</u>, 925 F.2d 1339, 1344 (11th Cir. 1991), citing <u>Brower</u>, 109 S. Ct. 1378 at 1381.  In other words, the unintended consequences of state action cannot form the basis of a Fourth Amendment violation because "the Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise lawful government conduct." <u>Brower</u>, 489 U.S. at 596-97(citations omitted).

The issuance of a search warrant based upon misinformation obtained from a police officer was addressed by the Supreme Court in <u>Malley v. Briggs</u>, 475 U.S. 335, 106  S. Ct. 1092, 89 L. Ed. 2d 271 (1986).  In <u>Malley</u>, the Court ruled that "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable [citation omitted] will the shield of immunity be lost." <u>Id</u>. at 345.  The

11

Court also noted that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Id. at 341.  The Supreme Court has further opined that the affidavit supporting a search warrant is given a "presumption of validity" and that it can be challenged only where the affiant has made a "deliberate falsehood" or has shown "reckless disregard for the truth." Franks v. Delaware, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).  Accordingly, the test of an officer's conduct in executing the search pursuant to a warrant is whether the officer's actions were objectively reasonable. See also Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  Additionally, the test of an officer's conduct in making the underlying affidavit is whether the officer deliberately lied or acted with reckless disregard for the truth.  Franks, 438 U.S. at 171.

For a search to be deemed objectively reasonable, actual probable cause is not necessary.  As the Eleventh Circuit Court of Appeals explained concerning an alleged illegal arrest in Von Stein v. Brescher, 904 F.2d 572 (1990), law enforcement officials will sometimes "mistakenly conclude that probable cause" exists, but in those instances the officials still are shielded by qualified immunity.  Id. at 579, citing Anderson v. Creighton, 483 U.S. 635,

12

641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  The issue, then, is whether there existed at the time "arguable" probable cause.  See Von Stein, 904 F.2d at 579, and cases cited therein.

The Eleventh Circuit Court of Appeals examined a situation somewhat similar to the facts of the instant case in Hartsfield v. Lemacks, 50 F.3d 950 (1995).   In Hartsfield, deputy sheriffs arranged a controlled buy at a house at 5108 Middlebrooks Drive. When they returned later with a search warrant for that residence, the officers mistakenly entered a house two doors down the street at 5128 Middlebrooks Drive.  The court held that the deputy who led the search was not entitled to qualified immunity because he failed to make a reasonable effort to identify the place to be searched.  The court noted that he had observed the controlled buy and should have been able to distinguish between the different, clearly marked houses during the daytime search.   The deputies accompanying him, however, were granted immunity because there was no evidence they had acted unreasonably in following the lead of the other deputy.  Id. at 955.  The court stated:

> It is undisputed that the officers did not have a search warrant for the Hartsfields' residence when they entered the house.  Nor did they have probable cause to believe that a crime was taking place at the Hartsfields' house. ... At the time of the officers' entry into the Hartsfields' home, it was thus clearly established law that, absent probable cause and exigent circumstances, a

13

> warrantless search of a residence violates the Fourth
> Amendment, unless the officers engage in reasonable
> efforts to avoid error.

Id. at 954-55.  The court noted that the numbers on the houses at issue were clearly marked and the lead deputy had the warrant in his possession but failed to check the address or perform any precautionary measures "that would have avoided the mistaken entry." Id.

The plaintiff points out that, even if the officers entered the premises in accordance with law, they still could be subject to liability under § 1983 if they carried out the search in an unreasonable manner.  Duncan v. Barnes, 592 F.2d 1336 (5th Cir. 1979).  In Duncan, the residents of an apartment that was searched in error were forced to stand nude, spread-eagled during the search.  Id. at 1337.  Doors were smashed, the television and a tape recorder were broken, and other personal property was damaged. Id.  The defendants had intended to search the apartment of another man, but had misidentified the location of the apartment; as a result the warrant stated that it was upstairs, when in fact the apartment sought was downstairs in the same building.

14

### 1. Officers Thrash, Sellers, and Salser

In light of the case law discussed above, the court first examines the application of qualified immunity to the officers who executed the search.   In order to determine whether Thrash, Sellers, and Salser are shielded from the § 1983 claims by qualified immunity, the court need only determine whether the unlawfulness of the defendants' conduct was readily apparent to them.   Plaintiff asserts that, because he did not match the description of the man detailed in the search warrant, the officers should have stopped the search as soon as they saw him.  The court finds no merit to this contention.

It is undisputed that Thrash, Sellers, and Salser acted according to a search warrant.  Moreover, there is no contention that any of these three officers had any reason to believe that the warrant was issued without "arguable" probable cause or was based upon a false underlying affidavit.  These officers were searching an apartment where illegal drugs had reportedly been purchased. The mere fact that the man in the apartment at the time of the search did not match the description of the alleged drug dealer was not sufficient to indicate to these officers that there were no illegal drugs on the premises.  Although plaintiff complains that his apartment was left in disarray and that he was taken outside

15

without his shirt on, there is no evidence that the search was conducted in an unreasonable manner.  Because plaintiff has failed to demonstrate that any of these officers acted objectively unreasonably, or that they conducted the search based upon a warrant that was without arguable probable cause, they are entitled to qualified immunity.  As in Hartsfield, they acted reasonably in following the lead of another officer.  No pre-existing law dictates that what these defendants did in searching the apartment and detaining the plaintiff violated any federal law; therefore, defendant's motion for summary judgment on all claims against defendants Thrash, Sellers, and Salser is due to be granted.

### 2.  Officer Finney

The claims against Finney, the officer who applied for the search warrant, bear further analysis because the plaintiff has argued that the search warrant was obtained by Finney's false testimony as to which apartment the informant entered to buy drugs. If plaintiff could demonstrate that Finney's reliance on the informant was objectively unreasonable, or that she intentionally offered false testimony, Finney would be stripped of the protection of qualified immunity, and plaintiff would be entitled to a jury trial.  However, the plaintiff's evidence, taken in the light most

16

favorable to him, indicates nothing more than that Finney may have been mistaken as to the number of the apartment where the drugs were purchased.

In this case, there is no evidence that Finney intentionally recorded the wrong apartment as the location of the drug buy or that she knew (or even had reason to suspect) that the information given by the informant was incorrect.  The evidence indicates that the informant had provided reliable information in the past, that Finney acted reasonably in remaining in the car across the street from the controlled buy because she might have been recognized by the drug dealers, and that she acted reasonably in ascertaining that the apartment where the drugs were bought was Apartment 3.  In fact, the only evidence that the apartment number was incorrect is plaintiff's own testimony that he was at home at the time of the controlled buy and that no one came to his door or otherwise used his apartment.  Even accepting plaintiff's testimony as true, that testimony indicates only that the apartment number was incorrect, not that Finney acted in an objectively unreasonable manner or that the affidavit setting forth the apartment number involved an intentional falsehood.  <u>Hartsfield</u> is easily distinguished from the instant case.  The address on the warrant in this case matched the address that was searched.  There is no evidence that the two

17

apartments were easily distinguished.  Furthermore, Finney had been provided information (even if that may have later been deemed incorrect) that Apartment 3 was the scene of the drug buy. Accordingly, <u>Hartsfield</u> does not compel the conclusion that Finney is not entitled to qualified immunity.  Furthermore, the Supreme Court in <u>Franks</u> recognized that an affiant's information often is based on tips or hearsay, and frequently must be garnered hastily. <u>Franks</u>, 438 U.S. at 169.  Thus, qualified immunity must be provided to the affiant, absent knowing or reckless behavior.

In sum, because the plaintiff has failed to demonstrate that there exists a genuine issue of material fact as to whether Finney offered the affidavit knowing it was false or with reckless disregard for the truth, plaintiff's claims against Finney are barred by qualified immunity.  Consequently, defendants' motion for summary judgment on the claims against Finney also is due to be granted.


**B.  Liability of the Municipality**

It is well-settled that a municipality cannot be liable for a constitutional tort under § 1983 unless the deprivation of the constitutional right occurred as a result of an official policy or custom of the governmental body.  See <u>Monell v. Department of</u>

18

Social Services of New York, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978).  Moreover, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  Id. at 691.  The Eleventh Circuit Court of Appeals has further determined that a municipality may be liable under § 1983 for the actions of a police officer only when the city's "official policy" caused the violation.  Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

In order to survive summary judgment on the illegal detention claim, the plaintiff must have come forward with evidence to show that the city had a policy of unlawfully detaining persons during the execution of search warrants, or that the city had a policy or practice of illegally obtaining search warrants.  It is here that plaintiff has failed to offer any evidence to support his claim. To the contrary, the evidence indicates that the police officers searched his apartment and detained him during the 50-minute search only after the police department received a complaint, investigated the premises, made a "controlled buy," and obtained a valid search warrant.  For this reason, defendants' motion for summary judgment on the plaintiff's claims against the City of Birmingham are due to be granted.

## II. State Law Claims

Plaintiff also asserts that he was unlawfully detained in violation of state law.  It is not entirely clear whether plaintiff is stating a claim for false arrest or false imprisonment, but the court finds that, in any event, defendants would be shielded from any state law claims on the basis of discretionary function immunity under Alabama law.

According to Alabama Code § 6-5-338, a police officer of any municipality in the state "shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Id. Discretionary functions have been deemed to be "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take, and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." Moore v. Adams, 754 So. 2d 630, 632 (Ala. 1999), citing Wright v. Wynn, 682 So. 2d 1, 2 (Ala. 1996) and L.S.B. v. Howard, 659 So. 2d 43 (Ala. 1995).  The Alabama Supreme Court specifically held that the immunity applies to the conduct of officers in the execution of a valid search warrant.  See Moore, 754 So. 2d at 632 (holding that immunity applied where officers mistakenly searched a house that was not the

20

house described in the warrant).  The statutory immunity extends
not only to the officers, but to the governmental unit that employs
them.  See Ex parte City of Montgomery, 758 So. 2d 565, 570 (Ala.
1999); see also Key v. City of Cullman, 2001 WL 1450651, *6-7 (Ala.
Civ. App. 2001)(holding that if its police officer is entitled to
immunity under § 6-5-338, the city also is entitled to immunity);
Montgomery v. City of Montgomery, 732 So. 2d 305 (Ala. Civ. App.
1999)(holding that both the officer and the city were immune under
§ 6-5-338 for arrest of man who was mistaken for the man named in
the warrant).

The immunity shields the officers and the city from liability
"unless [the] actions were conducted with willful or malicious
intent or in bad faith."  Ex parte City of Montgomery, 758 So. 2d
at 570.  As discussed *supra* in relation to qualified immunity, the
only allegations made by plaintiff that could be construed to
accuse any defendant of bad faith are that defendant Finney knew
the apartment number was wrong and intentionally falsified her
affidavit, or that the officers executing the warrant knew when
they saw the plaintiff that he did not fit the description in the
warrant and knew then that the search was without probable cause.
These allegations have been addressed by the court, and the court
finds that the plaintiff has failed to demonstrate any willfulness,

21

maliciousness, or bad faith on the part of any defendant. Accordingly, all of the defendants are shielded by Alabama's discretionary immunity statute, and the motion for summary judgment on all state law claims is due to be granted.

## CONCLUSION

Based on the foregoing undisputed facts and legal conclusions, the court finds that the motion for summary judgment filed by the defendants is due to be granted and this action is due to be dismissed with prejudice. A separate order will be entered dismissing the plaintiff's claims.

DATED this 29ᵗʰ day of _November_, 2001.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE